UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

BRUCE E. GREEN,                    )
                                   )
    Claimant,                 )
                                   )
v.                                 )     Case No. CV413-049
                                   )
CAROLYN W. COLVIN,                 )
*Acting Commissioner of*           )
*Social Security,*                 )
                                   )
    Defendant.                )

## **REPORT AND RECOMMENDATION**

Bruce E. Green appeals the Social Security Commissioner's denial of his 2009 application for Supplemental Security Income (SSI). Doc. 1. An ALJ evaluated his medical evidence and determined that, despite his low back pain stemming from a 2004 motor vehicle accident, his asthma, and his mental health issues, he is not disabled.[1]

---

[1] It has been his burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period *of not less than 12 months....*" 42 U.S.C. § 423(d)(1)(A) (emphasis added). His physical or mental impairment must be so severe that he is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

Doc. 16-12 at 16.[2] For the reasons set forth below, the Commissioner's decision denying benefits should be affirmed.

## I.  BACKGROUND

Born in 1962 and 49 years old at the time of the ALJ's September 2011 decision, doc. 16-15 at 12; doc. 16-2 at 34, 58; doc. 16-12 at 15, Green has a GED and previously worked as a dump truck driver.  Doc. 16-2 at 35-37.  As reflected in his SSI application (doc. 16-5; doc. 16-6) and later underscored by his administrative appeal brief, doc. 16-7, he suffers from various ailments, doc. 16-6 at 17 ("Degenerative disc Disease; Sinus Disease; Bi-Polar"), but the core of his disability claim rests on his bipolar disorder dating back to 2006. Doc. 16-6 at 17; doc. 28 at 1-2.  The ALJ found that he suffered from no severe physical impairment[3] but had the following severe mental impairments: alcohol abuse, polysubstance abuse, depression, and anxiety.  Doc. 16-12 at 8.

---

[2]  All documents referenced here have been "E-filed."  The Court is thus using the electronic pagination placed on the top of each page by the Court's CM/ECF software.

[3]  Green claimed problems like "low back pain" and asthma, doc. 16-12 at 8, but the ALJ found them to be not severe, *id.* ("no evidence of any functional limitations associated with back pain"; "Claimant's asthma is non-severe. . . ."), and Green raises no substantive challenge to that finding here.

Considering that combination of impairments, the ALJ further found that they would meet Social Security Regulation Listings 12.04 and 12.09, doc. 16-12 at 11-12, but Green's alcohol and substance abuse materially contributed to that disability determination. *Id.* at 12. Drug and alcohol abuse ("DAA")[4] can be fatal to a claim because, as more fully explained below, the law precludes the award of benefits when substance abuse is a contributing factor material to a disability finding. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. § 416.935; *Doughty v. Apfel*, 245 F.3d 1274, 1278-79 (11th Cir. 2001). In the face of DAA, the ALJ evaluates what capabilities would remain in its absence. *Deters v. Comm'r of Soc. Sec.*, 301 F. App'x 886, 888 (11th Cir. 2008). "If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Phillips*, 2014 WL 1246342 at * 3.

Here the ALJ expressly rejected Green's medical evidence that he was in remission (i.e., not abusing alcohol). Doc. 16-2 at 12. He specifically found that at most Green "would have mild difficulties if

---

[4] This is also an acronym for the "drug abuse and alcoholism analysis" the ALJ must undertake, as described *infra*. *See Phillips v. Colvin,* 2014 WL 1246342 at *3 (C.D. Cal. Mar. 24, 2014).

the substance use were stopped." *Id.* The "Georgia Regional Hospital reports for claimant's 2006 admissions reflect that [his] mood disorder was substance-induced." *Id.* Green himself testified that for years he had led a transient life, yet admitted that he is "easy to get along with," attracted a girlfriend to the fiancé level, and demonstrated social adaptability in moving from "shelter to friends' houses." *Id.* at 13.

The ALJ next found that if Green ceased indulging in substance abuse, his mental impairments would *still* be severe. But they would not medically meet or equal any listed impairment. Doc. 16-12 at 12-13. Stopping substance abuse, then, would yield him the residual functional capacity (RFC) to perform all past work exertional levels. Still, his depression and anxiety would limit him to work activities within a specific vocational preparation (SVP) of 1-3. *Id.* at 13-14.

Even at that, Green would experience problems. The ALJ determined that his concentration may drift for up to one-third of an eight-hour workday if the work is repetitive, routine, or boring. Nevertheless, the ALJ also found that Green can pay enough attention to details to meet the general productivity requirements of the job

within the same workday. *Id.* at 14. And even though Green's pace could be disrupted once or twice a week, he would still be able to perform assigned tasks by the end of the same workday. *Id.* Those findings figured into the RFC that the ALJ presented to a Vocational Expert (VE) at the hearing. Upon that VE's testimony, the ALJ found that Green could perform his past relevant work as a dump truck driver Doc. 16-12 at 15. Therefore, Green is not disabled. *Id.*

## II. STANDARD OF REVIEW

Affirmance of the ALJ's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the

Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159; *Lewis v. Astrue*, 2009 WL 464264 at *2 (M.D. Fla. Feb. 24, 2009).

This Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991). Nor may it "reweigh the evidence or make new factual findings." *Brown v. Commissioner of Soc. Sec.*, 2012 WL 638789 at * 1 (11th Cir. Feb. 29, 2012) (citing *Dyer*, 395 F.3d at 1210).

The burden of proving disability lies with the claimant. 20 CFR § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether he has met his burden, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 CFR § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that he has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, he must demonstrate a severe impairment or combination of impairments. *Id.*

Then, at step three, if the claimant's impairment meets or equals a listed impairment, he is automatically found disabled. *Id.* If not, he

must advance to step four, which requires him to prove an inability to perform past relevant work. *Id.* If he has never worked, or cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.*

DAA cases require an additional layer of consideration. The "ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under [20 CFR ] §§ 404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is medical evidence of his or her drug addiction or alcoholism, then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant would still be found disabled if he or she stopped using alcohol or drugs." *Price v. Colvin*, 2014 WL 1246762 at * 5 (D. Kan. Mar. 26, 2014). It is under that that framework that

[a]n applicant for social security benefits shall not be considered disabled "if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The key factor the Commissioner focuses on in deciding whether an applicant's alcoholism is a contributing factor material to the determination of disability "is whether [the Commissioner] would still find [the applicant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). That is, the Commissioner evaluates which of the applicant's physical and mental limitations would remain if the applicant stopped using drugs or alcohol and then decides whether any of those remaining limitations would be disabling. *Id.* § 404.1535(b)(2). "[I]n disability determinations for which the medical record indicates alcohol or drug abuse, the claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination ..." *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001).

*Deters,* 301 F. App'x at 887-88; *Timmons v. Comm'r of Soc. Sec.*, 522

F. App'x 897, 899 n. 1 (11th Cir. 2013); *see also* doc. 16-12 at 14.

## III. ANALYSIS

### A. DAA

Conceding that it is his burden to show that his substance abuse is not a contributing factor material to his disability determination, *Doughty,* 245 F.3d at 1279-81, Green argues that he met that burden, and that the ALJ's contrary finding on that aspect, plus his overall finding of non-disability, is evidentially unsupported.  Doc. 20 at 2; doc. 28.  To that end, plaintiff reminds that he "amended his alleged

onset date of disability . . . to 2009, i.e., the date of his application for Supplemental Security Income benefits." Doc. 28 at 1; *see also* doc. 20 at 1 (his opening brief affirming that); doc. 25 at 1 (SSA's brief reaching back to 2006 date); doc. 16-2 at 39 (ALJ confirmed this at the hearing; doc. 16-2 at 21 (ALJ's ruling that *res judicata* barred Green's application for disability insurance benefits based on an allegation disability beginning June 2, 2006).

Green also cites the following in arguing that the ALJ impermissibly engaged in hunches and speculation about his alcohol abuse: (a) there is no DAA evidence after November, 2009; (b) the ALJ's reliance on Memorial Health University Medical Center (MHUMC) 2011 records is flawed since neither it nor the hospital to which Green was transferred diagnosed any DAA or substance-induced mood disorder; (c) upon discharge, "the only diagnosis given was adjustment disorder with a depressed mood"; (d) no records show "signs of acute or chronic intoxication or withdrawal"; (e) in 2011, MHUMC detected in him only a .064 blood alcohol level (below legal DUI limits); (f) Green told the staff there only that he "*may* drink 1 to 2 beers about 2 to 3 times a week currently"; (g) under Social Security

Rule 13-2P, "[a] claimant's occasional maladaptive use or a history of occasional prior maladaptive use of alcohol or illegal drugs does not establish that the claimant has a medically determinable *Substance Use Disorder*"; (g) Green has not suffered any liver damage (a sign of alcohol abuse), as August 2010 tests show normal liver functioning; (h) consulting psychologist Dr. Roth did not diagnose any DAA when he examined Green, at the SSA's request, in 2010, and neither the ALJ nor the SSA's brief here even mention Dr. Roth at all; (i) Saleem Sayyar, M.D., who was Green's treating psychiatrist starting in July, 2010, wrote in July, 2011, that he had "no reason to suspect that [Green] has returned to using drugs or alcohol"; (j) the ALJ simply misread Sayyar's chart in rejecting that statement; (k) no treating psychiatrist or examining psychologist found ongoing DAA at any frequency or quantity that would establish the presence of "alcoholism" after November 2009; (l) at the hearing, the ALJ failed to obtain expert medical expert testimony on the presence of DAA. Doc. 28 at 2-4 (emphasis original).

Green is correct that the ALJ must consider all of the evidence in the claimant's record when making a disability determination. 20 C.F.R.

§§ 404.1520(a), 416.920(a). He must also "state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). But there is no rigid requirement that he specifically refer to every piece of evidence, so long his decision is not a broad rejection. He need provide only enough reasoning for a reviewing court to conclude that he considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *Gray v. Colvin*, 2014 WL 1118105 at * 3 (N.D. Fla. Mar. 20, 2014).

Hence, an ALJ's error for failing to lay out his analysis in detail can be deemed harmless. *E.g., Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 746 n.3 (11th Cir. 2008) (applying harmless error analysis to social security appeals where the record does not indicate that a legal error "affected the ALJ's decision). So long as this Court is not forced to speculate, the ALJ's ruling can otherwise be upheld. *Malave v. Colvin*, 2014 WL 895443 at * 4 (S.D. Ga. Mar. 6, 2014).

To that end, an ALJ of course is free to use common sense *and* common knowledge that many an alcoholic can live in denial of his alcoholism, if not try to conceal it, then enlist the active or passive

assistance of his doctors to minimize it in quest of entitlement dollars.[5] So even if DAA evidence does not leap out of medical records, that does not mean that an ALJ cannot draw reasonable inferences from live testimonial and documentary evidence before him. Such evidence is unmistakably tucked away in various corners of the record here. The same must be said for Green's residual functional capacity to work.

Just months before Green's claimed 2009 onset date he went (on January 15, 2009) to "Savannah Counseling" to resume medication for his anxiety and bipolar disorder. Doc. 16-8 at 70; doc. 16-12 at 9. There he reported no drug or alcohol use in six months. Doc. 16-8 at 73 (noting not since "6/2008"); *id.* at 76 ("Also [he] declines [Substance Abuse] treatment. Reports abstinence tw [sic] 6 months and not currently attending 12 step meetings"). He admitted that he lived a transient lifestyle for the past six years, relying on shelters and friends. *Id.* He was on no mental illness medications and had gone to Savannah Counseling at his disability attorney's urging. *Id.*; *see also* doc. 16-12 at 9.

---

[5] Courts themselves deploy common sense when reviewing ALJ decisions. *See, e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (common sense, not technical perfection, is a court's guide in reviewing an ALJ's evaluation of a Social Security disability claimant's complaints of disabling pain).

During his next visit in June 2009, Green reportedly had gone to an emergency room for a panic attack for which he was started on Zyprexa Doc. 16-8 at 80. At that time, he claimed that he had last used any drugs or alcohol "about two years" ago. *Id.*; doc. 16-12 at 9. But this, the ALJ noted, was contrary to Green's January 2009 claim of no such use in the prior six months. Doc. 16-12 at 9. Too, the examining physician then diagnosed Green with *substance*-induced mood disorder. *Id.*; doc. 16-8 at 80.

The ALJ next noted January 2010 treatment records showing that with treatment Green's depression was mostly gone and panic attacks were "much improved," with no side effect from medication reported. Doc. 16-12 at 10; doc. 16-9 at 18. Physician progress notes from March, 2, 2010 (not noted by the ALJ) show Green under four medications (including Lexapro and Depakote) and suffering from "underlying panic disorder," doc. 16-9 at 21, but by April 14, 2010, he denied any side effects to medication and did not complain of any symptoms. Doc. 16-8 at 87-8; doc. 16-12 at 10. On July 14, 2010, he reportedly stopped taking Depakote two months earlier because he believed it caused stomach cramps and his anxiety and nervousness with panic attacks had

increased with no clear triggers. Doc. 16-9 at 24; doc. 16-12 at 10. Hence, Green's mental condition undulated, but never rendered him incapable of daily functioning.

The ALJ also noted that in August 2010, Green was prescribed Vistaril for anxiety, which helped his mental disposition, although he had intermittent days of increased energy and frustration. Doc. 16-8 at 91; doc. 16-12 at 10. While Plaintiff had mild psychomotor agitation, he was "less anxious." Doc. 16-8 at 91; doc. 16-12 at 10. He denied medication side effects and in September 2010, reported that the medication helped with his anxiety. Doc. 16-8 at 94-95; doc. 16-12 at 10.

In November 2010 (an obvious typo in the ALJ's opinion erroneously designates this as "2008," doc. 16-12 at 10), Green denied suicidal ideation and depressive or psychotic symptoms, even though he had increased worry and "racing thoughts" during the evening. Doc. 16-9 at 30; doc. 16-12 at 10. At this time, plaintiff noted that he had not been able to get Trazadone due to cost and had not taken his Zypreza during the mornings. Doc. 16-9 at 30.

Green's anxiety and sleep had improved with medication by January 2011. Doc. 16-9 at 32; doc. 16-12 at 10. While he still had the

occasional panic symptom, it was not debilitating, and Vistaril was somewhat helpful. Doc. 16-9 at 32; doc. 16-12 at 10. Plaintiff reported no new problem or concern. *Id.* The ALJ next discussed his admission to Georgia Regional Hospital in February 2011 following a suicide attempt. Doc. 16-8 at 98-106; doc. 16-12 at 10. Green had then denied that it was a suicide attempt; rather, he took excessive medication to "get over the depression" following an altercation with his girlfriend's 18-year-old son. Doc. 16-8 at 105; doc. 16-12 at 10. Yet, he admitted to drinking two beers several times weekly. In that alcohol is a substance that he had abused in the past, this obviously supports the ALJ's DAA finding. Doc. 16-8 at 105. Too, the hospital detected his blood alcohol content upon admission at .064. Doc. 16-8 at 99.

Meanwhile, the hospital's social assessment identified his strengths as being "pretty easy to get along with." *Id.* at 104. On a scale of 1-10, Green rated his depression as a 5 and denied any hallucinations. *Id.* On discharge, he was diagnosed with only an adjustment disorder with

depressed mood, with no limitations on activity noted. *Id.* at 107-08. He

was assigned an "Axis V GAF 50" score.[6] *Id.* at 108.

On April 7, 2011, Green saw Dr. Sayyer at Savannah Counseling

again, and reported doing better since his hospital visit in February.

Doc. 16-9 at 34; doc. 16-12 at 11. The ALJ noted that his mood was good

during that visit, even though he felt "low" a few days during the week,

and he was sleeping well. Doc. 16-12 at 11; *see also* doc. 16-9 at 34.

---

[6] "GAF is the overall level at which an individual functions, including social, occupational, academic, and other areas of personal performance. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 1994) ("DSM–IV"). It may be expressed as a numerical score. *Id.* at 32. A score between 51 and 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*" *Gray v. Colvin*, 2014 WL 1118105 at * 5 n. 15 (N.D. Fla. Mar. 20, 2014). However, the

> [f]ailure to reference a GAF score is not, standing alone, sufficient ground to reverse a disability determination. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). For any GAF score of 50 or below in the medical record revealing possible serious mental impairments, the ALJ should determine what weight, if any, to give that particular score. *McCloud v. Barnhart*, 166 Fed.Appx. 410, 418 (11th Cir. 2006) (citing the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 1994)). However, the ALJ is not required to rely on a GAF score in making his ultimate disability determination. *Luterman v. Commissioner*, 518 Fed.Appx. 683, 690 (11th Cir. 2013).

*Sanders v. Astrue*, ___ F. Supp. 2d ___, 2013 WL 5411271 at * 14 (N.D. Ala. Sept. 26, 2013); *see also Sapp v. Astrue*, 2013 WL 6669424 at * 2 (N.D. Ala. Dec. 18, 2014) ("[T]he GAF scale "'does not have a direct correlation to the severity requirements in [the] mental disorders listings.'" *Nye v. Comm'r of Soc. Sec.*, 2013 WL 3869964 (11th Cir. July 26, 2013). Therefore, the ALJ is not required to rely on a GAF score in making her ultimate disability determination."); *Price*, 2014 WL 1246762 at * 7.

Green reported to Sayyer that his anxiety was still present but was "not too bothersome." Doc. 16-9 at 34. In June 2011, Green reported that his mood was stable and he denied depressive or manic symptoms. Doc. 16-9 at 36; doc. 16-12 at 11. He stated that he had periods of aggression and irritability, along with auditory hallucinations, which was why he was started on Zyprexa (i.e. June 2009). Doc. 16-9 at 36. Yet since starting Zyprexa, he claimed that he had no such symptoms. *Id.* While he denied drug use during this time, *he admitted he had to drink alcohol to go to sleep. Id.*; doc. 16-12 at 11. Green testified before the ALJ about his condition on August 3, 2011. He related almost exclusively non-exertional limitations.[7]

On the DAA finding, the ALJ properly considered the overall evidence and concluded that Green continued to use alcohol, despite his

---

[7] He testified: "I've been taking medicine and trying not to be so nervous, you know; and plus, I have problems getting -- when I'm around a bunch of people, I get really nervous and have problems with my nerves." Doc. 16-2 at 40. He claimed that he had a breakdown "about six months" before the hearing, *id.*, and lived with his girlfriend. *Id.* at 41. He sleeps a lot "because of the meds I'm taking," watches TV, listens to music, and occasionally goes for a walk. *Id.* He rarely goes out or socializes. *Id.* at 41-42.

Plaintiff's mother testified that has not been able to work for the last two years because he "has trouble concentrating, and he just can't seem to keep it together." *Id.* at 46. He has trouble taking orders, cannot concentrate, and gets very nervous and upset. "He's always had difficulty with people." *Id.* at 47; *see also id.* at 50.

claims to the contrary. In doing so, the ALJ noted and discounted a state agency medical consultant who found claimant's polysubstance abuse "in reported remission" (doc. 16-8 at 45; doc. 16-12 at 13) as well as the July 27, 2011 statement from Dr. Sayyar that Green's "polysubstance dependence, in full sustained remission" with no drug or alcohol use since June 2008. Doc. 16-12 at 11. The ALJ gave no evidentiary value to this statement and/or finding because it was inconsistent with Green's own admissions and the overall evidence.

In making these credibility determinations, the ALJ was free to cite Green's January 2009 report of no drug or alcohol in the prior six months, only to then claim (six months later) that he had last used drugs or alcohol "about two years" ago. Furthermore, in 2011 Green himself reported that he was still drinking (one to two beers two to three times a week) and his blood alcohol level ("BAL-64") was elevated when he was admitted to the Georgia Regional hospital in February 2011 for a medication overdose that he claimed was related to his depression. Doc. 16-8 at 99, 103; doc. 16-12 at 10; *see also* doc. 16-9 at 34 (4-7-11 progress notes showing he "[s]leeps well. Anxiety still present but not too bothersome."). And in June 2011, Green "denie[d] drug use during these

times [i.e., the immediate preceding months] but would have to drink to go to sleep." Doc. 16-9 at 36; doc. 16-12 at 10. In addition, Dr. Sayyar's "clean on drugs and alcohol since June, 2008" conclusion[8] was negated by the medical records noted above, reflecting post-2008 alcohol consumption. The DAA evidence, while not overwhelming, is clear and convincing enough to support (a) the ALJ's rejection of contrary medical opinions on the DAA factor, *see Phillips*, 2014 WL 1246342 at * 4; and (b) his DAA finding.

Applying the special DAA-based, burden-shifting standards noted above, the record reveals that Green failed to present sufficient evidence that his substance abuse was not a contributing factor material to the determination of disability. Hence, the ALJ properly determined that his substance abuse is a contributing material factor in that, if Green stopped his substance abuse, he would be able to perform his past job as a dump truck driver. (Tr. 460-461). *See Kirven v. Colvin*, 2014 WL 1255846 at * 6-7 (N.D. Tex. Mar. 27, 2014) (substantial evidence supported ALJ's finding that homeless bipolar claimant was under a

---

[8] Sayyer wrote that Green "has a history of substance use" and his "diagnoses are (1) bipolar disorder type I and (2) polysubstance dependence in remission." Doc. 16-9 at 44. Yet in a July 27, 2011 "To whom it may concern" letter, he insisted that Green "has been clean on drugs and alcohol since June, 2008." Doc. 16-9 at 48.

disability, but that a substance use disorder was a contributing factor material to the determination of disability, so she had not been disabled for SSI period claimed; VE testified she could work as a housekeeper, etc.).

## B. Step 1-5 Disability Finding

Although the main dispute on this appeal is over the DAA finding (*see* Green's reply brief, doc. 28), the Court will briefly review the step 1-5 disability finding to the extent it may be said that Green also challenges it. In considering non-DAA mental impairments, the ALJ observed that Dr. Sayyar -- whose report was requested by Green's disability lawyer, doc. 16-9 at 40, 44-45 -- gave no reason why he diagnosed Green with disabling bipolar disorder. The ALJ found overly-restrictive Dr. Sayyar's assessment that Green would have "great difficulty participating in gainful employment"; this was inconsistent with the overall record. Doc. 16-12 at 11 (citing doc. 16-9 at 41-48). In assigning Sayyar's assessment no evidentiary value, the ALJ properly noted that there was no evidence of manic episodes and no evidence of cycling regarding his affective disorders. Doc. 16-9 at 44; doc. 16-12 at 11. In fact, Green has *denied* manic episodes, and the record contains no

evidence supporting such a diagnosis. Doc. 16-9 at 36 ("He denies depressive or manic symptoms."). Further, when treated the year before with anti-depressant medication, his depression was "mostly gone." Doc. 16-9 at 18. Recall that it is the claimant's burden to show disability lasting more than 12 months, *see supra* n. 1, hence crippling (disabling) bipolarity. Similarly, Green's anxiety improved with medication. Doc. 16-8 at 91, 94; doc. 16-9 at 32, 34.

Likewise, the ALJ was authorized to discount the state agency medical consultant's opinion that Green experienced moderate restrictions with social interaction. As the ALJ noted, plaintiff relied on friends for help and often moved from place to place for shelter. Furthermore, he had acquired a close girlfriend (reaching fiancé level) of more than one year duration, and has stated that he is "pretty easy to get along with." Doc. 16-8 at 103. Because a restriction on social interaction is inconsistent with the overall record of routine social adaptation, the ALJ was authorized (note that only substantial evidence need exist here, *see supra* Part II) to reject the state consultant's report. Doc. 16-12 at 11. Enough record evidence authorized the ALJ to find Green's claims about the crippling (to the point of disability) effects of

his mental health symptoms "not credible to the extent they are inconsistent with the [RFC]" because: (a) medical records going back to 2006 reveal that his "mood disorder was substance-induced"; (b) his condition has been shown to be remediated with medication *and* cessation of alcohol consumption; (c) there is no evidence that Green has suffered from manic episodes; and (d) the record evidence supports the RFC, in the absence of substance abuse. *Id.* at 14-15.[9]

Substantial evidence therefore supports the ALJ's finding that Green had a combination of impairments which did not meet Listings 12.04 and 12.05.[10] That evidence entitled the ALJ to find that: (a) Green's alcohol and substance abuse was a contributing factor material to this determination of disability; and (b) if he stopped the substance

---

[9] The SSA's regulations specifically require an ALJ to address weight and credibility issues with reasoning when making a disability determination. *See* 20 CFR §§ 404.1520(a)(4) (five-step process); 416.920(a)(4) (same); 404.1527(c) (weighing medical opinions); 416.927(c) (same); 404.1529 (credibility); 416.929 (same). *See Harlan v. Astrue*, 510 F. App'x 708, 712 (10th Cir. 2013). In so doing, however, he is free to accord more or less weight to any medical opinion if there is good cause to do so. *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).

[10] The threshold criteria of Section 12.05 require that the evidence show that Green suffers from deficits in adaptive functioning. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C). "Adaptive functions" are activities such as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(1).

abuse, his mental impairments would still be severe; but (c) they would not medically meet or equal any listed impairment; and (d) he would have the RFC to perform all exertional levels of his past work, though his depression and anxiety would limit him to work activities with a specific vocational preparation (SVP) of 1-3. Doc. 16-12 at 13-14.[11] *See Duncan v. Astrue*, 782 F. Supp. 2d 9 (D. Conn. 2011) (claimant had the RFC to perform light work despite allegations that he suffered from anxiety, depression, and borderline intellectual functioning, where none of his impairments satisfied the requirements of any impairment listed in the regulations, he was not performing substantial gainful work activity, and, although his FRC did not allow him to perform his past relevant work, the limitations placed on his ability to perform light work had little impact on the number of jobs available to him), cited in 3 SOC. SEC. LAW & PRAC. § 43:34 (Mar. 2014).

## C. VE Testimony

---

[11] Specifically, the ALJ noted that while Green's concentration may drift for up to 1/3 of an eight-hour workday if the work is repetitive, routine or boring -- he could pay enough attention to details to meet the general productivity requirements of the job within the same workday. Doc. 16-12 at 13-14. The ALJ also noted that even though Green's pace could be disrupted once or twice a week, he would still be able to perform assigned tasks by the end of the same workday. *Id.*

Finally, Green challenges the ALJ's RFC and ultimate finding based on the VE's testimony. Doc. 20 at 9-14. As noted above, at step four of the sequential evaluation process, the ALJ had to determine if plaintiff could perform his past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."). Here a claimant bears the burden of proving he cannot perform his past relevant work either as he performed it or as it is generally performed in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv),(f); *Doughty*, 245 F.3d at 1278.

The VE testified that Green's former work as a dump truck driver was classified as medium, performed at light level, with an SVP of 2. Doc. 16-2 at 53. The ALJ asked the VE to assume an individual with claimant's vocational background and the limitations reflected in the ALJ's RFC finding as outlined and discussed above. *Id.* at 54-55. When the ALJ asked whether such an individual could perform Green's past relevant work, the VE said the individual could perform that former, dump truck driver work. *Id.* at 55.

The ALJ's hypothetical question to the VE encompassed all of Green's limitations deemed credible by the ALJ. Doc. 16-2 at 54-55.

The Commissioner argues that this is enough. Doc. 25 at 12-15. Green insists that there is no evidence showing the mental functional capacity requirements of the dump truck driver occupation, as required by SSR 82–62, 1982 WL 31386. Doc. 20 at 12. And the VE himself testified that the dump truck is a "very large and dangerous vehicle." Doc. 16-2 at 57; *see also Vanlandingham v. Astrue*, 2010 WL 2105927 at * 7 (N.D. Miss. Apr. 6, 2010) (truck driving "requires computer knowledge and the ability to communicate with others.").

The Court rejects Green's argument. The ALJ asked the VE to compare Green's work over the past 15 years with comparable work in the Dictionary of Occupational Titles (DOT), which itself specifies exertional limitations and from which the ALJ was able to determine an SVP of 2. Doc. 16-2 at 53. While consulting the DOT, the VE explained the particulars and range of dump truck work as "found under the field of transporting." *Id.* at 54.[12] The ALJ then accurately

---

[12] Note, for that matter that SSR 82-62 authorizes ALJ's to rely on the *claimant* for past-work particulars. "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." And the ALJ may consult, "in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in

summarized, in his hypothetical question to the VE, the limitations and capabilities that he found to be fairly attributable to Green. *Id.* at 54-55.

That process need not be precise. *Wells v. Colvin*, 727 F.3d 1061, 1073-74 (10th Cir. 2013) (even if three of four jobs ALJ found claimant capable of performing, customer complaint clerk, order clerk, and home health coordinator, were not past relevant work (PRW), finding that claimant was capable of PRW as bookkeeper was sufficient to support ALJ's determination that claimant could perform PRW); *Harper v. Colvin*, 528 F. App'x 887 (10th Cir. 2013) (ALJ adequately considered claimant's depression and low back pain at steps four and five in evaluating her disability applications, where ALJ addressed and considered both impairments, but found they did not cause limitations sufficient to impede her ability to perform her past work as short order cook and, alternatively, light sedentary work).

Here the records show that the ALJ properly utilized the VE's testimony to find that Green could perform his past relevant work as a

---

the economy." *Id.* Green testified as to the particular demands of his truck-driving jobs, doc. 16-2 at 35-38, and the ALJ was authorized to consider that information.

dump truck driver. See 20 C.F.R. § 416.960(b)(2); *Luterman v. Comm's Soc. Sec.*, 518 F. App'x 683, 690 (11th Cir. 2013) (VE's testimony was substantial evidence supporting ALJ's decision at fifth step of sequential analysis that claimant could perform a significant number of jobs in the national economy and was not disabled; ALJ's hypothetical question to VE sufficiently accounted for claimant's mental impairments).

Green contends the ALJ's decision failed to mention or consider the VE's response to alternate hypothetical questions. Doc. 20 at 11-13. But those other hypothetical questions presented a more significant restriction on claimant's ability to concentrate (i.e. marked limitations on concentration or "consistently losing concentration /focus"). And an ALJ is not required to accept a VE's response to a hypothetical question that includes limitations the ALJ rejected or were not supported by the record. *See Wilson*, 284 F.3d at 1227; *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Luterman*, 518 F. App'x at 690 ("The ALJ was not required to include in the hypothetical question Dr. Coleman's additional limitations that the ALJ found were

not supported by the record."), *cited in* 3 Soc. Sec. Law & Prac. §
43:131 (Mar. 2014).

## IV. CONCLUSION

The ALJ properly found that Plaintiff was not disabled in the
absence of substance abuse, and substantial evidence supports his
decision. *See* 20 C.F.R. §§ 416.920(c), 416.921; *Doughty*, 245 F.3d at
1278; *Deters*, 301 F. App'x at 888; SSR 13-2p. Accordingly, the
Commissioner's decision must be affirmed and plaintiff's case should
be **DISMISSED WITH PREJUDICE**.

**SO REPORTED AND RECOMMENDED** this 8th day of April,
2014.

_____
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**